DOTY et al. v. DELLINGER et al.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. NOTES—GENUINENESS OF INDORSEMENT—EVIDENCE—SUFFICIENCY.
    In an action on notes the evidence *held* sufficient to sustain a finding that indorsements were not genuine.

Appeal from Special Term, Genesee County.

Action by Selina A. Doty and another against John Dellinger and others. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Myron H. Peck, for appellants.
David D. Lent, for respondents.

SPRING, J. This action is by a firm consisting of two private bankers to recover on two promissory notes executed by Carrie F. Schlenker and Jacob Schlenker, her husband, to the order of John Dellinger, and bearing his apparent indorsement, and duly discounted with the plaintiffs. One note of $3,300 bears date January 25, 1903, due in 15 days, and the other, for a like sum, is dated February 1, 1903, and due in 7 days from its date. Dellinger denied that he indorsed these notes, and the referee has found in his favor. About the only question presented for our consideration is whether this finding of fact is contrary to the evidence. We think the evidence is abundant to support the referee. The Schlenkers occupied a store building owned by the respondent, and he had been in the habit of indorsing their paper frequently. Mrs. Schlenker testified that Dellinger indorsed the note dated January 25th on Monday, the 26th, at the Schlenker store, and the one dated February 1st on the 2d, as it matured on Sunday, also in the store, and a board was obtained for the respondent to place the note on to write his indorsement. There is very slight corroborating evidence. A woman named Safford, who had been employed by the Schlenkers since January 6, 1902, testified that at one time she got a board and pen and ink for Mr. Dellinger in the store, but is unable to locate the time, and she did not see Dellinger write at all. Mr. Safford, the husband of the witness last referred to, testified that one time Dellinger did some writing on the desk, and at another on a board. The wife testified that the writing at the desk "was right after we had the new desk put in," and it is conceded this desk was placed in the store in February, 1902, a year prior to the giving of these notes. Minnie Alexander, also an employé of the Schlenkers, testified that Mr. Dellinger was in the store one evening, and did some writing. She is not able to fix the time. And Mrs. Schlenker testified that each of the notes in suit was indorsed Monday afternoon. In view of the fact that concededly Dellinger indorsed several notes for the Schlenkers, and in their store, during the year preceding the giving of the notes in suit, there is very little corroboration in the testimony of these witnesses. There are some circumstances, to which I will briefly advert, which tend to support the plaintiffs' contention. In the first place,

Dellinger had often indorsed with the Schlenkers, and never refused to do so when applied to but once, and that refusal was after the notes in suit were made, and was subsequently retracted for reasons which the respondent has given. It is therefore urged that there was no motive for Mrs. Schlenker, who apparently looked after the renewal of the paper, to forge the signatures, when she could procure them by going in the next store, where the old man was carrying on a mercantile business with his son-in-law. The notes were in renewal of others outstanding, but Dellinger's position is that the indorsements on those were not genuine. They were not produced on the trial, and the suggestion·is that they were carefully destroyed by Mrs. Schlenker as they from time to time matured. In February, 1902, Dellinger evidently became alarmed in regard to the extent of the Schlenker notes afloat on which he was liable, and asked Mr. Tomlinson, president of the Bank of Batavia, to ascertain the amount of this paper at the various banks in Batavia. Mr. Tomlinson ascertained the amount, and gave it to Mr. Dellinger, the list aggregating $13,700, and the indebtedness in fact was upwards of $17,000. Dellinger carried this slip around in his pocket, and gave no intimation to any of the banks that his signature on any of these notes was a forgery. It is claimed in his behalf that he did not then know. He kept no track of the notes, and was not aware at that time that the indorsements were not genuine. Again, he took security along—a mortgage in October, 1902, and insurance policies after the alleged discovery of the forgeries. Even after that time he indorsed a renewal⸱note for. $280. He claims that indorsement was made upon the promise of Mrs. Schlenker to deliver to him the canceled note, as he believed that was a forgery, and· was desirous of obtaining it. It is also to be remarked that at the time these notes in suit matured the Schlenkers were in failing circumstances, and subsequently made an assignment for the benefit of their creditors to the son-in-law of the respondent. On the other hand, there are several facts which make for the respondent. Many of his genuine signatures are in evidence. The alleged forged signatures on the two notes in suit and those in the companion action are markedly dissimilar from the conceded signatures. Again, the four indorsements claimed to be forgeries are closely alike. The counsel for the appellants concedes the manifest difference in these indorsements from the genuine signatures, but in explanation Mrs. Schlenker testified that along in December and thereafter Dellinger took extra pains with his signature, and wrote it laboriously. The difficulty with this contention is that the other genuine·signatures of Dellinger along about this period possess the marked peculiarities which are palpable in all his genuine signatures. Dellinger was about 75 years of age, born in Germany, and of meager English education. He wrote but little, and with evident effort, confined chiefly to his signature, and it is hardly possible that he could depart so manifestly· from his ordinary signatures, and continue the new handwriting alike in four signatures made at different dates. He testified that he expected Mrs. Schlenker to ask him to renew these notes, and he remained in his store all day, intending to get the originals, and ascertain if they were genuine; that he did not go in the Schlenker store at all on either of these days, and

the notes were not presented to him for renewal, and he did not indorse them. His son-in-law, Mr. Haitz, who seems to be a man of standing, testified that Mr. Dellinger talked over the subject of these indorsements, and that Dellinger remained in the store purposely on the two days when these notes are claimed to have been indorsed. Several witnesses familiar with the handwriting of Dellinger testified that, in their judgment, these indorsements were not made by him. Another cogent circumstance is that the bankers who knew his signature did not testify to the genuineness of these indorsements, although several of them were witnesses on other matters on behalf of the plaintiffs, and testified to their familiarity with his signature. His signature was well known in Batavia, yet witnesses could not accordingly identify them. This excuse does not appeal to me with the force given it by the counsel. The signature was too well marked to be radically disguised by this illiterate old man. Mrs. Schlenker testified that her husband was present when these notes were indorsed, but he was not sworn, which seems somewhat strange. An examination of the enlarged indorsements shows a tremor—a lack of freedom of movement —observable in the genuine signatures. While one of the experts enters into an elaborate analysis of each of the simulated signatures in comparison with those concededly genuine to support his conclusion that the indorsements are forgeries, I lay no stress upon this evidence, although some of his reasoning is pertinent. The referee apparently was not influenced by this class of testimony. Our conclusion is that there was ample evidence to sustain the judgment, and that it ought not to be disturbed. The judgment and order should be affirmed, with costs.

Judgment affirmed, with costs. All concur.